WAYNE C. MAYER (62031)
Law Offices of Wayne C. Mayer
4619 Van Dyke Avenue
San Diego, CA 92116
(619) 281-9263
fax (619) 281-2963

Attorney for Material Witness:  MARTIN SANCHEZ CAMPOS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 07 CR 3353 JM |
| Plaintiff, | POINTS AND AUTHORITIES IN SUPPORT OF MARTIN SANCHEZ CAMPOS' MOTION FOR VIDEO TAPED DEPOSITION |
| vs. | |
| JOSE HEREDIA-GUZMAN, JUAN CARLOS VASQUEZ-MENDOZA, RAMON GALLARDO-SAMANO, | DATE: January 15, 2008<br>TIME: 9:30 a.m.<br>DEPT: Magistrate Stormes |
| Defendant(s). | |

Material witness MARTIN SANCHEZ CAMPOS (hereafter "Material Witness") by and through his counsel, Wayne C. Mayer, submits the following Memorandum of Points and Authorities in support of his motion for a court order to take the Material Witness' videotaped deposition.

**I.**

**INTRODUCTION**

On or about November 13, 2007, the material witness (es) was detained by the United States Border Patrol in connection with the arrest of defendants in the above-entitled case. The

-1-                                                                                                                                                   07 CR 3353 JM

1  defendants were charged with intent to violate the immigration laws of the United States,
2  knowing and in reckless disregard of the fact that aliens had come to, entered and remained in
3  the United States in violation of law, did transport and move said aliens within the United States
4  in furtherance of such violation of law, in violation of Title 8 U.S.C. sec. 1324 (a)(2)(A)(ii).
5  The material witnesses were observed/ discovered along the United State and Mexico border.
6        Agents using Calexico Border Patrol Station's Remote Video Surveillance System
7  (RVSS) observed several suspected illegal aliens raft across the Briar Canal several hundred
8  yards west of the Calexico East Port of Entry.  Agents in the immediate area observed a pick up
9  truck stopped for a brief moment along Carr Road.
10       Agents who responded to the area observed a green colored Ford Crown Victoria driving
11 or traveling in a circle.  Agents followed the vehicle and noticed it was westbound towards
12 Barbara worth Road and turned northbound on Barbara Worth Road.  At the same time agents
13 observed a Ford Aerostar van turn onto Carr Road and proceed toward the group of suspected
14 illegal aliens.  The van continued past the group of suspect illegal aliens and continued eastbound
15 on Carr Road.
16       After several minutes the same white van made another pass by the suspect group of
17 illegal aliens.  At the same time the green Crown Victoria car passed the agents location.  The
18 green car and the white van passed each other going in opposite directions.  During this pass the
19 van proceeded toward the group of suspected illegal aliens.  The agents then were notified by the
20 RVSS operator that the group of illegal aliens had gotten up and ran toward the white van.
21 Agents in the area observed the aliens board the white van, pull back on Carr Road and proceed
22 eastbound.
23       Agents followed the van as it traveled eastbound on Carr Road then northbound onto
24 Highway 7 and then westbound on Interstate 8.   Agent Sandoval following the van was able to
25 get an unobstructed view of the driver of the van and continued to follow the van.

1    Suspecting the green Ford Crown Victoria was involved in smuggling activity followed
2 the sedan from a distance.
3    Agents Harrington and Sedano activated their service vehicle's emergency lights and
4 sirens indicating to the driver of the Ford Arostar van to stop. The driver, later identified as
5 defendant JOSE HEREDIA GUZMAN, ignored the lights and siren and continued westbound on
6 Interstate 8.
7    A Controlled Tire Deflation Device (CTDD) was successfully deployed east of the
8 Bowker Road overpass. Defendant HEREDIA continued driving westbound for several hundred
9 yards. HEREDIA turned north leaving the westbound lanes of the Interstate and continued
10 driving westbound in a muddy area. As the van continued on the muddy road, Agent Harrington
11 got an unobstructed view of the driver of the van. The van rolled on its roof to a stop near the
12 "Bowker Road Next Exit" sign
13    Agents approached the van, immediately identified themselves as United States Border
14 Patrol Agents and Agent Harrington found defendant HEREDIA sitting in the right front
15 passenger seat.
16    Agent Sedano approached the passenger side of the van and found nine (9) occupants
17 inside of the van. Agent Sedano conducted interviews with the group and identified one
18 individual later identified as JUAN CARLOS VASQUEZ-MENDOZA who was determined to
19 be a foot guide.
20    Agent Vega-Torres continued following the Ford Crown Victoria through several roads
21 and then entering Interstate 8. The Ford Crown Victoria passed the location of the rolled van and
22 the other agents. A vehicle stop was performed on the Ford Crown Victoria believing it was
23 involved in smuggling activity. The driver of the Ford Crown Victoria was identified as
24 RAMON GARLLARDO SAMANO who claimed to be a citizen of Mexico without immigration
25 documents that would allow him to enter, work or remain in the United States. He was arrested.

HEREDIA was read his Miranda rights which he indicated he understood and waived. HEREDIA said he met an unknown smuggler in the streets of Mexicali. He indicate he was being charged $1500 to be smuggled into the United States and did not have any money so he made arrangements to drive for the smuggler. HEREDIA indicated he was taken to Indio, California and given the keys to a van and instructions to drive back to Calexico, California and drive to Wal-Mart. At Wal-Mart he was given directions to pickup the illegal aliens. HEREDIA indicated he was led to the pickup spot by someone else.

Defendant JUAN CARLOS VASQUEZ MENDOZA was read his Miranda rights which he indicated he understood and was willing to waive. VASQUEZ stated he is a citizen of Mexico without legal right to enter or remain in the United States. He admitted to guiding eight illegal aliens into the United States. He admitted he receives $50.00 for each illegal alien that he successfully guides into the United States. He was going to receive $400.00 for today's job.

Defendant RAMON GALLARDO SAMANO was read his Miranda rights and indicated he understood his rights and was willing to waive his rights. GALLARDO SAMANO denied being involved in the smuggling of aliens. He had in his possession a cellular telephone which had phone numbers in the phone similar the phone numbers in HEREDIA'S cellular telephone. GALLARDO identified HEREDIA from a photographic lineup and indicated that HEREDIA was a friend of his and they had friends in common.

The witness who is the subject of this motion MARTIN SANCHEZ CAMPOS (hereafter "Material Witnesses") was removed from the van driven by defendant HEREDIA. Along with SANCHEZ CAMPOS two other material witnesses were detained and identified as JUAN RAMON YUPIT CHAC and NICAORA MORENO KOH. They were all detained. The material witness MARTIN SANCHEZ CAMPOS was identified and indicated he could implicate the defendant VASQUEZ as the guide who led them across the canal and border into the United States. VASQUEZ led them to the highway where they were picked up by the van.

The material witness is one of the three (3) illegal aliens identified as material witnesses and detained that day by the United States Border Patrol. Three witnesses were detained for prosecution of the defendant. Two have been released on a material witness bonds and remain in the United States pending trial of the underlying matter. The witness MARTIN SANCHEZ CAMPOS has no one in the United States who can assist them in making or posting bond and therefore he remains in custody pending a resolution of this matter or a video deposition.

The material witnesses and defendants were transported to the Border Patrol station, read their Miranda rights, stated they understood their rights and were willing to make statements about the offense without an attorney being present. The defendants VASQUEZ admitted crossing into the United States with the other men.

Material witness MARTIN SANCHEZ CAMPOS stated he is a citizen and national of Mexico without valid immigration documents to enter or remain in the United States legally. He indicated he was to pay a smuggling fee. He admitted that the defendant VASQUEZ was their guide, that he was giving orders, organizing and giving instructions and explaining to the witness what they could expect when they crossed into the United States. The material witness crossed into the United States with the defendant VASQUEZ and identifies the defendant VASQUEZ as the guide.

MARTIN SANCHEZ CAMPOS was detained for prosecution of the defendants.

MARTIN SANCHEZ CAMPOS indicates to me that he has family in Mexico who needs his attention. He came to the United States to visit father (illegal alien) who lives in New York, New York. He was crossed by the defendant VASQUEZ and was in the van when it was detained by the agents who apprehended the others.

He has indicated to me he has no family or friends in the United States that could assist the witness in posting a material witness bond and therefore will remain in custody until the defendant pleads guilty or his testimony is preserved by a video deposition.

It is unnecessary to keep the Material Witness in custody because his testimony can be preserved through the use of a videotape deposition. The Material Witness therefore requests a court order that testimony of the Material Witness MARTIN SANCHEZ CAMPOS be preserved through the use of videotape deposition and, thereafter, that the material witness be allowed to return to Mexico.

## II.

**THE TESTIMONY OF THE MATERIAL WITNESS CAN BE SECURED BY VIDEOTAPE DEPOSITION AND THERE IS NO COMPELLING REASON TO KEEP THEM IN THIS COUNTRY**

Section 3144 of Title 18 of the United States Code provides:

> No material witness may be detained…if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.

A material witness may request that his deposition be taken and that he be released at the conclusion of the deposition. [Federal Rules Crim. P. 15(a)]. Where the material witness' motion demonstrates his testimony "can be adequately secured by deposition" and that "further detention is not necessary to prevent a failure of justice" the court *must* order his deposition and prompt release.[1]  Torres-Ruiz v. United States 120 F.3d 933, 935 (9th Cir. 1997) [citing Aguilar-

---

[1] While a witness may be detained for a reasonable period of time, the court must vigilantly guard an undocumented alien's "overriding liberty interest" and schedule a videotape deposition at the earliest possible time. See, Aguilar-Ayala v. Ruiz, 973 F.2d 411, 419 (5th Cir.1992).USDCT not and mo video

Ayala v. Ruiz 973 F.2d 411, 413 (5th Cir. 19920]. See also, 8 U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure 15.

1. <u>The Material Witness' Testimony Can Be Adequately Secured By Deposition</u>

The Material Witness should not be detained because their testimony can be adequately secured by deposition. This is a routine alien smuggling case. Based on interviews with the Material Witness and the report submitted by the arresting agency, the facts to which the Material Witness is competent to testify are straightforward. (see Mayer Declaration at para. 2-13). He identifies the foot guide (see Mayer Declaration at para. 18), and none of the other defendants involved in this matter. Moreover, the Government's case does not depend on the testimony of the Material Witness alone. Agent Sandoval got an unobstructed view of the van driver (see Mayer Declaration at para. 7). Law enforcement agents identify the drivers of both involved vehicles. The material witnesses were in only one vehicle and this witness can not identify the driver of either vehicle. Neither the Material Witness nor their counsel have been informed by either the government or defense attorneys of any reason why MARTIN SANCHEZ CAMPOS' testimony cannot be adequately secured by deposition. (see Mayer Declaration Para. 36).

2. <u>Further Detention of the Material Witness Is Not Necessary To Prevent a Failure of Justice</u>

Deposition of material witness may be used at trial in criminal cases, so it is only in *exceptional circumstances*, where the interests of justice will be denied, that a videotape deposition is not appropriate. See Torres-Ruiz v. United States 120 F.3d at 936 (9th Cir. 1997); 8 U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure 15.

Defendants may be present at the videotape deposition and therefore have a full and fair opportunity to confront and cross-examine the witness. The videotape provides sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of a statement. Dutton v. Evans 400 U.S. 89 (1970).

The government or defendant can effectuate the detention of a material witness upon a showing that (1) the material witness will, in all likelihood, be unavailable to testify for trial, and (2) that the use of deposition testimony will deny the defendant a fair trial and that live testimony would somehow be significantly different. See Aguilar-Ayala v. Ruiz 973 F.2d 413 (5th Cir. 1992), United States v. Humberto-Rivera 859 F.2d 1204, 1208 (4th Cir. 1988). That would be a difficult burden in this case because the Material Witness has indicated he will voluntarily return for trial. (see Mayer Declaration at para. 36)[2]

Neither the Material Witness nor his counsel has been informed by either the government or defense attorney(s) of any reason why detention is necessary to prevent a failure of justice. (see Mayer Declaration at para. 38)

For these reasons, the Material Witness requests that the Court immediately order the taking of his videotape deposition, and thereafter that he be immediately returned to his country of origin.

### III.

**IF THE COURT DENIES THE MATERIAL WITNESS' REQUEST TO TAKE THEIR VIDEOTAPE DEPOSITION, THEY REQUEST THAT THE GOVERNMENT PROVIDE THEM WITH A STATEMENT OF REASONS WHY THEY HAVE TO REMAIN IN CUSTODY**

---

[2] The government would undoubtedly take reasonable steps to secure the witness's testimony at trial by personally subpoenaing the witness, providing travel costs, and arranging for legal re-entry of the alien (See United States v. Eufracio-Torres 890 F.2d 266, 270.

1  Where a witness has been held in custody for more than 10 (ten) days, the government
2  has an obligation to prepare a biweekly report stating the reasons why such witness should not be
3  released with or without the taking of a deposition. [Fed. Rules Crim. Proc., Rule 46(g)].
4  The Material Witness is not aware of any reason why he should remain in custody, but to
5  the extent the government knows of any such reason, he hereby requests that the government
6  provide him with a copy of a biweekly written report indicating these reasons.

## IV.

## CONCLUSION

For the foregoing reasons, the Material Witness MARTIN SANCHEZ CAMPOS respectfully requests that their Motion for the Taking of Videotape Deposition be granted. In the alternative, the witness requests he immediately be provided with a statement of reasons why he needs to remain in custody.

Dated: December 21, 2007            s/ Wayne C. Mayer
                                    Wayne C. Mayer
                                    Attorney for Material Witness
                                    MARTIN SANCHEZ CAMPOS