Wayne C. Mayer
Law Offices of Wayne C. Mayer
4619 Van Dyke Avenue
San Diego, CA 92116
(619) 281-9263
Fax (619) 281-2963

Attorney for Material Witnesses:    MARTIN SANCHEZ CAMPOS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 07 CR 3353 JM |
| | ) |
| Plaintiff, | ) DECLARATION OF WAYNE C. MAYER |
| | ) IN SUPPORT OF MOTION FOR |
| vs. | ) VIDEOTAPED DEPOSITION OF |
| | ) MATERIAL WITNESS (ES) MARTIN |
| JOSE HEREDIA-GUZMAN, JUAN | ) SANCHEZ CAMPOS: |
| CARLOS VASQUEZ-MENDOZA, | ) |
| RAMON GALLARDO-SAMANO, | ) Date: January 15, 2008 |
| | ) TIME:  9:30 a.m. |
| Defendants. | DEPT:  Mag. Stormes |

I, Wayne C. Mayer, declare:

I am the attorney appointed to represent the material witness (es) above referenced in the Prosecution of defendants above referenced;

1.  On or about November 13, 2007, the material witness (es) were detained by the United States Border Patrol in connection with the arrest of defendants in the above-entitled case. The defendants were charged with intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens had come to, entered and remained in the United States in violation of law, did transport and move said aliens within the United States in furtherance of such violation of law, in violation of

-1-                                    07 CR 3353 JM

Title 8 U.S.C. sec. 1324 (a)(2)(A)(ii).   The material witnesses were observed/ discovered along the United State and Mexico border.

2.   Agents using Calexico Border Patrol Station's Remote Video Surveillance System (RVSS) observed several suspected illegal aliens raft across the Briar Canal several hundred yards west of the Calexico East Port of Entry.  Agents in the immediate area observed a pick up truck stopped for a brief moment along Carr Road;

3.   Agents who responded to the area observed a green colored Ford Crown Victoria driving or traveling in a circle.  Agents followed the vehicle and noticed it was westbound towards Barbara worth Road and turned northbound on Barbara Worth Road.  At the same time agents observed a Ford Aerostar van turn onto Carr Road and proceed toward the group of suspected illegal aliens.  The van continued past the group of suspect illegal aliens and continued eastbound on Carr Road;

4.   After several minutes the same white van made another pass by the suspect group of illegal aliens.  At the same time the green Crown Victoria car passed the agents location.  The green car and the white van passed each other going in opposite directions.  During this pass the van proceeded toward the group of suspected illegal aliens;

5.    The agents then were notified by the RVSS operator that the group of illegal aliens had gotten up and ran toward the white van.  Agents in the area observed the aliens board the white van, pull back on Carr Road and proceed eastbound;

6.   Agents followed the van as it traveled eastbound on Carr Road then northbound onto Highway 7 and then westbound on Interstate 8;

7.   Agent Sandoval following the van was able to get an unobstructed view of the driver of the van and continued to follow the van.

Suspecting the green Ford Crown Victoria was involved in smuggling activity followed the sedan from a distance;

8.  Agents Harrington and Sedano activated their service vehicle's emergency lights and sirens indicating to the driver of the Ford Arostar van to stop.  The driver, later identified as defendant JOSE HEREDIA GUZMAN, ignored the lights and siren and continued westbound on Interstate;

9.  A Controlled Tire Deflation Device (CTDD) was successfully deployed east of the Bowker Road overpass. Defendant HEREDIA continued driving westbound for several hundred yards.  HEREDIA turned north leaving the westbound lanes of the Interstate and contuned driving westbond in a muddy area.  As the van continued  on the muddy road, Agent Harrington got an unobstructed view of the driver of the van.  The van rolled on its roof to a stop near the "Bowker Road Next Exit" sign;

10.  Agents approached the van, immediately identified themselves as United States Border Patrol Agents and Agent Harrington found defendant HEREDIA sitting in the right front passenger seat;

11.  Agent Sedano approached the passenger side of the van and found nine (9) occupants inside of the van.  Agent Sedano conducted interviews with the group and identified one individual later identified as JUAN CARLOS VASQUEZ-MENDOZA who was determined to be a foot guide.

12.  Agent Vega-Torres continued following the Frod Crown Victoria through several roads and then entering Interstate 8.  The Ford Crown Victoria passed the location of the rolled van and the other agents;

13.  A vehicle stop was performed on the Ford Crown Victoria believing it was involved in smuggling activity.  The driver of the Ford Crown Victoria was identified as RAMON GARLLARDO SAMANO who claimed to be a citizen of Mexico without immigration documents that would allow him to enter, work or remain in the United States.  He was arrested;

14.  HEREDIA was read his Miranda rights which he indicated he understood and waived. HEREDIA said he met an unknown smuggler in the streets of Mexicali.  He indicate he was being charged $1500 to be smuggled into the United States and did not have any money so he made arrangements to drive for the smuggler. HEREDIA indicated he was taken to Indio, California and given the keys to a van and instructions to drive back to Calexico, California and drive to Wal-Mart.  At Wal-Mart he was given directions to pickup the illegal aliens.  HEREDIA indicated he was led to the pickup spot by someone else;

15.  Defendant JUAN CARLOS VASQUEZ MENDOZA was read his Miranda rights which he indicated he understood and was willing to waive.  VASQUEZ stated he is a citizen of Mexico without legal right to enter or remain in the United States.  He admitted to guiding eight illegal aliens into the United States.  He admitted he receives $50.00 for each illegal alien that he successfully guides into the United States.  He was going to receive $400.00 for today's job;

16. Defendant RAMON GALLARDO SAMANO was read his Miranda rights and indicated he understood his rights and was willing to waive his rights.  GALLARDO SAMANO denied being involved in the smuggling of aliens.  He had in his possession a cellular telephone which had phone numbers in the phone similar the phone numbers in HEREDIA'S cellular telephone.  GALLARDO identified HEREDIA from a photographic lineup and indicated that HEREDIA was a friend of his and they had friends in common;

17. The witness who is the subject of this motion MARTIN SANCHEZ CAMPOS (hereafter "Material Witness") was removed from the van driven by defendant HEREDIA.  Along with SANCHEZ CAMPOS two other material witnesses were detained and identified as

JUAN RAMON YUPIT CHAC and NICAORA MORENO KOH.  They were all detained;

18.  The material witness MARTIN SANCHEZ CAMPOS was identified and indicated he could implicate the defendant VASQUEZ as the guide who led them across the canal and border into the United States.  VASQUEZ led them to the highway where they were picked up by the van;

19.  The material witness is one of the three (3) illegal aliens identified as material witnesses and detained that day by the United States Border Patrol.  Three witnesses were detained for prosecution of the defendants.  Two of the material witnesses have been released on a material witness bonds and remain in the United States pending trial;

20.  The witness MARTIN SANCHEZ CAMPOS has no one in the United States who can assist him in making or posting bond and therefore he remains in custody pending a resolution of this matter or a video deposition;

21.  The material witnesses and defendants were transported to the Border Patrol station, read their Miranda rights, stated they understood their rights and were willing to make statements about the offense without an attorney being present;

22.  The defendant VASQUEZ admitted crossing into the United States with the other men and being a guide;

23.  Material witness MARTIN SANCHEZ CAMPOS stated he is a citizen and national of Mexico without valid immigration documents to enter or remain in the United States legally.  He indicated he was to pay a smuggling fee.  He admitted that the defendant VASQUEZ was their guide, that he was giving orders, organizing and giving instructions and explaining to the witness what they could expect when they crossed into the United States;

07 CR 3353 JM

24.  MARTIN SANCHEZ CAMPOS was detained for prosecution of the defendants;

25.  MARTIN SANCHEZ CAMPOS indicates to me that he has family in Mexico who needs his attention.  He came to the United States to visit father (illegal alien) who lives in New York.  He was crossed by the defendant VASQUEZ and was in the van when it was detained by the agents who apprehended the others;

26.  MARTIN SANCHEZ CAMPOS indicates to me he has no family or friends in the United States that could assist the witness in posting a material witness bond and therefore will remain in custody until the defendant pleads guilty or his testimony is preserved by a video deposition;

27.  I have made a diligent search to locate friends or family in the United States who could assist the material witness MARTIN SANCHEZ CAMPOS;

28.  I have called and spoken with MARTIN SANCHEZ COMPOS' mother in Mexico in an effort to locate a relative or friend in the United States who could be of assistance to the material witness and have not been able to locate a possible surety;

29.  The family in Mexico indicates they need MARTIN SANCHEZ COMPOS home in Mexico to help support the family;

30.  A complaint charging the defendants with smuggling illegal aliens was filed November 15, 2007;

31.  The defendants were thereafter indicted and the defendants arraigned on the indictment in this case and is now set for motions in U. S. District Court for the Southern District of California January 18, 2008;

32.  I have made a diligent effort to locate sureties for the material witnesses in this matter;

33.  During my interview with the material witness he indicated he had come to the United States in search of employment in order to support his needy families that remained behind in Mexico and he needed to work to support his family;

34.  The facts to which the material witness would testify are straight forward, he was by foot and apprehended in a vehicle driven by one of the defendants.  In the vehicle in which he was located was the guide who crossed him into this country illegally;

35.  The defendants VASQUEZ and HEREDIA confessed to assisting and driving the material witnesses across the border in an effort to circumvent immigration laws;

36.  I have not been advised by either government or defense counsel of any reasons why the witnesses' testimony cannot be adequately secured by deposition;

37.  Law Enforcement officials arresting the defendants can independently identify the defendants as the driver of the smuggling vehicle and the persons in the motel room;

38.  I have not been advised by either government or defense counsel of any reason why a detention is necessary to prevent a failure of justice;

39. The parties have not been able to negotiate a resolution of this matter or stipulate to a date for a video deposition in order to facilitate the release of the material witnesses and their return to their country of origin and I believe that because of the relationship of the various parties this case is likely to proceed to trial;

I make this declaration under penalty of perjury and the laws of the United States of America and California.

Dated: December 21, 2007                    s/  Wayne C. Mayer
                                            Wayne C. Mayer
                                            Attorney for Material Witnesses