KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE HEREDIA-GUZMAN (1), <br> JUAN VASQUEZ-MENDOZA (2), <br> RAMON GALLARDO-SAMANO (3), <br><br> Defendants. | CRIM. CASE NO.   07CR3353-JM <br><br> DATE: January 4, 2008 <br> TIME: 11:00 a.m. <br><br> Before Honorable Jeffrey T. Miller <br><br> GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT HEREDIA-GUZMAN and DEFENDANT GALLARDO-SAMANO'S MOTION TO: <br> (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; <br> (2) GRANT LEAVE TO FILE FURTHER MOTIONS. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files hereby files its Response in Opposition to defendant Jose Heredia-Guzman and defendant Ramon Gallardo-Samano's above-referenced Motions. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On December 12, 2007, a federal grand jury in the Southern District of California returned a seven count Indictment charging defendants Jose Heredia-Guzman, Juan Carlos Vasquez-Mendoza and Ramon Gallardo-Samano with one count of conspiracy to bring in illegal aliens into the United States

for financial gain in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 371, three counts of bringing in illegal aliens for financial gain and aiding and abetting, in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 2 and three counts of transporting and moving illegal aliens within the United States and aiding and abetting, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(II). Defendants were arraigned on the Indictment on December 13, 2007, and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

**A.    The Smuggling Offense**

On November 13, 2007, at approximately 6:00 p.m., Border Patrol Agent Stephen Carter was operating the Remote Video Surveillance System (RVSS) observed a group of suspected illegal aliens raft across the Briar Canal. This area is located several hundred yards to the west of the Calexico East Port of Entry. Agent Carter continued to observe the group and informed other agents that the group had rafted across the Briar Canal and ran north through the agricultural fields towards Carr Road.

Initially, Agent Vega-Torres and Agent Harrington positioned themselves in an area several hundred yards east of the group. However, as Agent Vega-Torres drove towards the area where the group of illegal aliens were last seen, he noticed that he was traveling behind a green Ford Crown Victoria ("the vehicle"), bearing California license plate 5XOB771. When the vehicle turned westbound on Carr Road, Agent Vega-Torres noticed that the vehicle was traveling in a circle. Agent Vega-Torres followed the vehicle as it traveled westbound to Barbara Worth Road. When the vehicle turned north on Barbara Worth Road, Agent Vega-Torres remained near the intersection of Carr Road and Barbara Worth Road.

Meanwhile, Agent Harrington observed the group of suspected illegal aliens run north through the fields and then lie down a short distance south of Carr Road. Agent Vega-Torres then observed a white Ford Aerostar van ("the van") turn onto Carr Road and travel towards the group of suspected illegal aliens. Agent Harrington then observed the van pass the group's location and continue to drive eastbound on Carr Road. Minutes later, Agent Vega-Torres observed the van once again drive towards

the group's location. At approximately the same time, Agent Harrington once again observed the Crown Victoria pass his location on Carr Road.

The van and the vehicle passed each other, traveling in opposite directions on Carr Road. The vehicle continued to drive westbound towards Agent Vega-Torres. The van pulled to the side of the road and stopped near the group. Both Agent Carter, who was still operating the RVSS, and Agent Harrington observed the group enter the van. Border Patrol agents began to follow the van and shortly thereafter, activated their emergency lights and sirens to stop the van. The driver of the van, later identified as defendant Jose Heredia-Guzman, ignored the lights and sirens and continued westbound on Interstate 8. A controlled tire deflation device was used to stop the van. However, defendant Heredia-Guzman continued to drive the van and then moved to the passenger seat of the van while it was still moving. Eventually, the disabled van rolled to a stop one foot away from a large wooden post.

Border Patrol agents approached the van and identified themselves. Agent Harrington made contact with defendant Heredia-Guzman, who was seated in the front passenger seat. Defendant Heredia-Guzman stated that he was a citizen of Mexico without any immigration documents to allow him to be in the United States. Nine other individuals were found crouched down in the rear portion of the van. All nine individuals stated they were citizens of Mexico without any immigration documents that would allow them to be in the United States. All the individuals were arrested and transported to the Calexico Border Patrol Station.

Meanwhile, Agent Vega-Torres began to follow the Crown Victoria after it passed him on Carr Road. The vehicle zig-zagged back and forth on the lightly traveled road until it ultimately entered Interstate 8 and drove passed the location where the other agents had apprehended the van. Agent Vega-Torres and Agent Mills conducted a stop of the vehicle. The agents made contact with the driver of the vehicle, later identified as defendant Gallardo-Samano. Defendant Gallardo-Samano claimed to be a citizen of Mexico without any immigration documents that would allow him to be in the United States. Defendant Gallardo-Samano was arrested and transported to the Calexico Border Patrol Station.

### 1. Defendant Heredia-Guzman's Statement of the Offense

At approximately 10:09 p.m., Agent Vega-Torres advised defendant Heredia-Guzman of his Miranda rights, which he acknowledged and waived. Heredia-Guzman again stated that he was a citizen of Mexico without any immigration documents. Heredia-Guzman admitted that he illegally entered the United States five days prior to his arrest. Once in the United States, Heredia-Guzman met with a smuggler named "Cholo." Cholo offered to transport Heredia-Guzman to Indio, California for $1500. Since Heredia-Guzman did not have the money to pay the smuggling fee, he agreed to "drive" for Cholo in lieu of the smuggling fee.

Heredia-Guzman was taken to Indio, California where he was then given keys to the white van. The smugglers instructed Heredia-Guzman to drive back to the Walmart in Calexico, California. He arrived at the Walmart at approximately 5:00 p.m. on November 13, 2007. Once there, he received a phone call on his cellular phone and was instructed to pick up the illegal aliens. Heredia-Guzman was given directions as to where to pick up the illegal aliens. The first time he drove passed the location, he did not see the group. When he made the second trip, someone called him on his phone and told him where to stop the van. When he stopped, approximately seven individuals entered the van.

Once he picked up the aliens, he began to drive towards El Centro, California. Heredia-Guzman admitted that he did not stop the van when he saw the agents' lights and sirens or after he felt the van's tires deflating. Instead, Heredia-Guzman admitted that he moved to the passenger seat of the van while it was still in motion and instructed the smuggled aliens not to tell the agents that he was driving the van.

### 2. Defendant Vasquez-Mendoza's Statement of the Offense

At approximately 11:44 p.m., Agent Vega-Torres advised defendant Vasquez-Mendoza of his Miranda rights, which he acknowledged and waived. Vasquez-Mendoza again stated that he was a citizen of Mexico without any immigration documents. Vasquez-Mendoza also admitted that he guided eight illegal aliens into the United States and that he was to receive $50.00 for each alien.

Vasquez-Mendoza stated that he led the group across canals and eventually to the loading spot where they were picked up by the van. The driver of the van opened the door and instructed them to

get inside the van and to sit down. Vasquez-Mendoza realized that they were being followed when he heard the sirens and saw the lights. Vasquez-Mendoza further stated that after the van's tires had popped, the driver of the van got out of the driver's seat. The van kept moving without a driver and eventually came to a stop.

### 3.   Defendant Gallardo-Samano's Statement of the Offense

At approximately 12:20 a.m. on November 14, 2007, Agent Vega-Torres advised defendant Gallardo-Samano of his Miranda rights, which he acknowledged and waived. Defendant Gallardo-Samano stated that he was a citizen of Mexico and that he had a border crosser card which was stolen in May of 2007.

Gallardo-Samano stated that he had illegally entered the United States approximately two months. On November 13, 2007, he had an argument with his girlfriend and decided to go to Mexicali. He drove to the Walmart in Calexico. Once there, he called his girlfriend and asked her to go to Mexico with him. She agreed and they had planned to meet at the Walmart. Gallardo-Samano further claimed that he drove around the area surrounding the Calexico East Port of Entry to waste time while he waited for his girlfriend to arrive.

Gallardo-Samano denied any involvement in the smuggling offense.

### 4.   Cellular Phones

One cellular phone was seized from defendant Heredia-Guzman and one cellular phone was seized from defendant Gallardo-Samano. Agents compared the numbers from both phones and discovered that the two phones had four common numbers in their list of contacts. Defendant Gallardo-Samano's phone showed that he had contact from three of these four numbers during the time he claimed to be waiting for his girlfriend.

### 5.   Material Witnesses' Statements

Three illegal aliens from the van were retained as material witnesses – Martin Sanchez-Campos, Juan Ramon Yupit-Chac and Nocaora Moreno-Koh. Each provided a videotaped statement, in which they admitted to being citizens and nationals of Mexico with no legal right to enter or reside in the United States. Sanchez-Campos stated that he was going to pay $2300 to be smuggled to New York. Yupit-Chac stated that he was going to pay an unknown amount to be smuggled to Los Angeles,

California. Moreno-Koh stated that her husband was going to pay a fee for her to be smuggled into the United States.

## III

## ARGUMENT

### A. Motion to Compel Discovery

The United States has and will continue to fully comply with its discovery obligations. To date, the United States has produced 135 pages of discovery to defendants' counsel including two DVDs containing the defendants' post-arrest statements and the statements of the material witnesses. As of today, the United States has received no reciprocal discovery. Counsel believes that all discovery disputes can be resolved amicably and informally in this case. In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time. The Government has no objection to the preservation of evidence for a reasonable time period.

#### 1. Defendant's Statements

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

#### 2. Arrest Reports, Notes and Dispatch Tapes

The United States does not object to the request for arrest reports and has already produced to Defendant all arrest reports known to the United States at this time.

The United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d

582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).

The undersigned Assistant United States Attorney has requested the dispatch tapes related to this case and will produce it in discovery upon receipt.

        3.      Brady Material

The United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

1    Although the United States will provide conviction records, if any, which could be used to
2    impeach a witness, the United States is under no obligation to turn over the criminal records of all
3    witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such
4    information, disclosure need only extend to witnesses the United States intends to call in its case-in-
5    chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d
6    1305, 1309 (9th Cir. 1979).

7    Finally, the United States will continue to comply with its obligations pursuant to United States
8    v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

9        4.    Any Information That May Result in a Lower Sentence Under the Guidelines

10   The United States has complied and will continue to comply with its discovery obligations
11   under Brady v. Maryland, 373 U.S. 83 (1963).

12       5.    Any Information That May Result in a Lower Sentence Under 18 U.S.C. § 3553

13   The United States has complied and will continue to comply with its discovery obligations
14   under Brady v. Maryland, 373 U.S. 83 (1963).

15       6.    Defendant's Prior Record

16   The United States has provided Defendant with a copy of Defendant's known prior criminal
17   record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir.
18   1990). Should the United States determine that there are any additional documents pertaining to
19   Defendant's prior criminal record, those will be promptly provided to Defendant.

20       7.    Any Proposed 404(b) Evidence

21   The United States will disclose, in advance of trial, the general nature of any "other bad acts"
22   evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence
23   404(b).

24       8.    Evidence Seized

25   The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing
26   Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence
27   which is within the possession, custody or control of the United States, and which is material to the
28

1  preparation of Defendant's defense or are intended for use by the United States as evidence in chief
2  at trial, or were obtained from or belong to Defendant, including photographs.

3      9.    <u>Request for Preservation of Evidence</u>

4  As stated above, the United States will preserve all evidence to which the Defendants are
5  entitled pursuant to the relevant discovery rules. The United States also has no opposition to a
6  preservation order, should Defendant seek one from this Court.

7      10.    <u>Tangible Objects</u>

8  The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing
9  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that
10 are within its possession, custody, or control, and that is either material to the preparation of
11 Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at
12 trial, or was obtained from or belongs to Defendant. The United States, however, need not produce
13 rebuttal evidence in advance of trial. <u>See</u> <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

14     11.    <u>Evidence of Bias or Motive to Lie</u>

15 The United States is unaware of any evidence showing that any prospective Government
16 witness is biased or prejudiced against Defendant or has a motive to falsify testimony. The United
17 States will comply with its obligations under <u>Brady</u>, <u>Henthorn</u>, and <u>Giglio</u>.

18     12.    <u>Impeachment Evidence</u>

19 The United States is unaware of any evidence that any prospective witness has engaged in any
20 criminal act, but will comply with its obligations under <u>Brady</u>, <u>Henthorn</u>, and <u>Giglio</u>, as well as all
21 other applicable rules of discovery. The Government is unaware of any statements favorable to
22 Defendant, and repeats that all reports from the date of arrest have been produced.

23     13.    <u>Evidence of Criminal Investigation of Any Government Witness</u>

24 The United States objects to providing any evidence that a prospective witness is under criminal
25 investigation, but will provide the conviction record, if any, which could be used to impeach all
26 witnesses the United States intends to call in its case-in-chief.

27 In addition, the United States will comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.
28 1991) and request that all federal agencies involved in the criminal investigation and prosecution

review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality.  United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

14. Evidence Affecting Perception, Recollection, Ability to Communicate or Truth Telling

The United States is unaware of any evidence tending to show that any prospective witness's ability to perceive, recollect, tell the truth, or communicate is impaired.

15. Witness Addresses

The United States objects to this request as overbroad, unnecessary, and unsupported. Through discovery, Defendant has the names of the officers and agents involved in her arrest.  In addition, the United States will provided Defendant with a list of witnesses it intends to call in its trial memorandum. The United States objects to the request for the name and address of witnesses who will not be called by the Government at trial as overbroad and irrelevant.

16. Name of Witnesses Favorable to the Defendant

The United States is unaware of any witnesses favorable to Defendant.

17. Statements Relevant to the Defense

All known statements have been produced.  The United States will continue to comply with its obligation to produce all evidence relevant to the defense.

18. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

19. Giglio Information

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

20. <u>Reports of Scientific Tests or Examinations</u>

Defendant requests the results of any scientific or other tests or examinations in connection with this case. The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

21. <u>Henthorn Material</u>

The United States will comply with its obligations under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in camera</u> inspection and review.

22. <u>Informants and Cooperating Witnesses</u>

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an <u>in camera</u> inspection to determine whether disclosure of the informant's identity is required under <u>Roviaro</u>. <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an <u>in camera</u> inspection.

23. <u>Expert Witnesses</u>

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

24. <u>Residual Request</u>

The United States has complied with Defendant's residual request for prompt compliance with Defendant's discovery requests and will continue to do so.

**B.     Motion for Leave to File Further Motions**

The Government opposes this request unless the motion is based upon newly discovered evidence not available to Defendant at the time of the motion hearing.

# IV

# **CONCLUSION**

For the foregoing reasons, the United States requests that Defendant's Motions be denied where opposed.

DATED: December 29, 2007

                                             Respectfully Submitted,

                                             KAREN P. HEWITT
                                             United States Attorney

                                             <u>s/ Luella M. Caldito</u>

                                             LUELLA M. CALDITO
                                             Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 07CR3353-JM |
| Plaintiff, ) ) | |
| v. ) ) | **CERTIFICATE OF SERVICE** |
| JOSE HEREDIA-GUZMAN (1), ) JUAN VASQUEZ-MENDOZA (2), ) RAMON GALLARDO-SAMANO (3), ) ) ) Defendants. ) ) | |

IT IS HEREBY CERTIFIED THAT:

   I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

   I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT HEREDIA-GUZMAN AND DEFENDANT GALLARDO-SAMANO'S MOTION TO (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE AND (2) GRANT LEAVE TO FILE FURTHER MOTIONS.
on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

   **Frank A. Balistrieri, Counsel for Defendant Jose Heredia-Guzman;**
   **Zandra Lopez, Counsel for Defendant Juan Vasquez-Mendoza;**
   **Joseph Milchen, Counsel for Defendant Ramon Gallardo-Samano**; and
   **Wayne Mayer, Counsel for the Material Witnesses**

   I declare under penalty of perjury that the foregoing is true and correct. Executed on December 29, 2007.

                              s/ Luella M. Caldito
                              LUELLA M. CALDITO